UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES J. ROLL,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,
    Defendant.

Case No. 1:07-cv-136

Judge Susan J. Dlott
Magistrate Judge Timothy S. Black

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) JUDGMENT BE ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS AS OF APRIL 29, 1999; AND (3) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge erred in finding that plaintiff was not entitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") 448-460) (ALJ's decision)).

**I.**

Plaintiff filed his application for DIB in January 2001, alleging that he was disabled beginning in April 28, 1999, due to difficulty lifting caused by nerve damage in his left arm and a bulging disc in his cervical spine. (Tr. 49-51, 71, 91.) That application was denied initially, and on reconsideration, and in a final decision issued by an Administrative Law Judge (the "ALJ") on February 23, 2003. Plaintiff then sought judicial review. (Tr. 5-25, 28-48.) (Thereafter, plaintiff's insured status for DIB expired on September 30, 2004.[2])

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] To be entitled to DIB, plaintiff must simply establish that he became disabled prior to September 30, 2004, when his insurance status expired. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990)

On June 21, 2005, the district court remanded this case for further proceedings. (Tr. 465-87.) Pursuant to the Court's order, the Appeals Council remanded the case back to the ALJ. (Tr. 486-87.) On December 22, 2005 and on March 28, 2006, ALJ Smith held hearings at which plaintiff appeared, with counsel, and testified, as did a vocational expert. (Tr. 514-27, 686-752).

Thereafter, on December 22, 2006, the ALJ issued her decision denying plaintiff's claim. That decision stands as defendant's final determination. The ALJ's "Findings" – which represent the rationale of the decision – were as follows:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through September 30, 2004.

2. The claimant has not engaged in "substantial gainful activity" since the alleged onset of disability.

3. The claimant has the following "severe" impairments: residual effects of a left arm injury, including degenerative joint disease, left lateral epicondylitis, left carpal tunnel syndrome, and left radial neuropathy, as well as degenerative disc disease of the lumbar spine and reactive depression and anxiety.

4. His impairments, singly or in combination, do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The undersigned finds that the claimant's allegations regarding his symptoms and limitations are not credible for the reasons set forth in the body of this decision.

6. Physically, the claimant has the residual functional capacity to perform a wide range of work at the light exertional level, as described in this decision. Mentally, he is limited to work that is not highly complex or detailed in nature. (20 CFR 404.1520a).

2

7. The claimant was 52 years of age on April 18, 1999 and is now 59.

8. The claimant has a high school education (20 CFR 404.1564).

9. The claimant has transferrable skills from skilled work previously performed such as those skills related to testing of electrical component circuit boards. These skills transfer to other sedentary and light jobs without significant vocational adjustment. (20 CFR 404.1568).

10. The claimant can return to work as a television and VCR repairman as generally performed at the light level in the national economy. (20 CFR 404.1565).

11. The claimant's medically determinable impairments do not preclude the claimant from performing his past relevant work as generally performed as a television and VCR repairman.

12. In addition, although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rules 202.07 and 202.15 as a framework for decision-making, there are a significant number of jobs in the national economy that he can perform. Examples of such jobs include light exertional product tester, sedentary-level product tester, sedentary-level inspector, and light exertional inspector.

13. The claimant was not under a "disability" as defined in the Social Security Act, at anytime through the date of this decision. (20 CFR 404.1520 (f) and (g)).

(Tr. 459-460.)

In summary, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Regulations, and, therefore, was not entitled to DIB.

On appeal, plaintiff maintains that: (1) the ALJ erred in finding that plaintiff could perform his past relevant work; (2) the ALJ erred in finding that plaintiff has transferrable skills; and (3) the ALJ erred in failing to give controlling weight to the RFC assessments of plaintiff's treating physicians. Upon careful consideration, the undersigned finds that

3

the ALJ's RFC finding is not supported by substantial evidence.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can

still perform his past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform his past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.*, No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*). If the ALJ determines at Step 4 that the claimant can perform his past relevant work, the ALJ need not complete the sequential analysis. *See* 20 C.F.R. § 404.1520(a). However, if the ALJ errs in finding that the claimant can perform his past relevant work, the matter should be remanded for further consideration under Step 5. *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### III.

Plaintiff maintains that the ALJ erred in formulating plaintiff's RFC assessment because she failed to give controlling weight to the opinions of plaintiff's treating physicians. The undersigned agrees.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are

5

accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); s*ee also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983).  Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983).  If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).  In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the

6

frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

Here, as outlined by plaintiff, the record reflects:

In November, 2000, plaintiff began treating with Jamal M. Taha, M.D., a board certified neurosurgeon at the Mayfield Clinic. On initial examination, Dr. Taha noted two problems: neck pain and elbow pain. He reviewed the MRI of the cervical spine and thought that Mr. Roll might benefit from neck surgery, but he wanted to obtain a new EMG to finalize such a decision. (Tr. 261.) A subsequent EMG was performed on November 10, 2000. The EMG was negative for nerve problems related to the neck but it did show carpal tunnel syndrome at the left wrist and ulnar nerve lesion at the left wrist. (Tr. 237, 263.) Dr. Taha suspected a possible radial nerve entrapment around the elbow that could mimic the symptoms of tennis elbow and wanted an another EMG specific to evaluating a possible radial nerve entrapment. (Tr. 263.)

Another EMG and nerve conduction study was performed November 28, 2000. This study documented evidence of: (1) a chronic left C8-T1 radiculopathy; (2) left median neuropathy at the wrist (carpal tunnel syndrome), and (3) left distal radial neuropathy. (Tr. 196, 197-236.) Dr. Taha indicated this test was significant, too, because the "left radial sensory nerve action potential was absent." He indicated that Mr. Roll's

7

clinical signs – such a pain aggravated by pronation and supination of the elbow, decreased pinprick sensation over the snuffbox, and paresthetic sensations over the distribution of the radial nerve – were suggestive of a radial nerve entrapment.  Tr. 265.  He recommended an MRI of the elbow to rule out musculoskeletal injury.  *Id*.  The MRI indeed showed no soft tissue problems.  (Tr. 256.)

Accordingly, Dr. Taha believed that "the type of pain that he [plaintiff] has could very well be commensurate with radial nerve entrapment which causes a syndrome that mimics tennis elbow."  (Tr. 267.)  He recommended an exploratory surgery but also noted that the surgery could make things worse.  (*Id*.)  Mr. Roll declined the surgery, and Dr. Taha thought that was an appropriate decision given the risks involved.  (Tr. 359.)

On September 11, 2001, Mr. Roll followed up with Dr. Taha because he continued to experience back and bilateral leg pains. On examination, there was tenderness over the low back and his left ankle reflex was depressed.  (Tr. 352.)  Dr. Taha reviewed the MRI and indicated that it showed a herniated disc at L5-S1 diffused bilaterally.  Dr. Taha felt this herniation was "commensurate with [Mr. Roll's] symptomatology of radiculopathy" that he described.  (*Id*.)  He recommended physical therapy, and plaintiff underwent physical therapy from September 18, 2001 through October 12, 2001.  (Tr 320-34.)

The physical therapy, however, did not help plaintiff's pain.  Thereafter, Dr. Taha recommended a discogram to see if plaintiff were a candidate for a interbody cage fusion.  (Tr. 357.)  The discogram was performed March 7, 2002, and an injection of dye in the disc at L5-S1 replicated Mr. Roll's pain.  (Tr. 314.)  The test was considered "positive

8

symptomatic discography at L5-S1." (Tr. 315.) A post-dicography CT scan also showed the damage at L5-S1. The L5-1 disc was markedly narrowed, and the impression was "probable bulging disc and even herniation extending along the right S1 nerve root." (Tr. 312.) Dr. Taha believed two different types of surgery were options, but "none of these surgeries should be taken lightly in terms of their potential risks of complications." (Tr. 360.)

Moreover, an MRI of the lumbar spine was performed December 10, 2003, and it showed severe disc narrowing at L5-S1 along with facet hypertrophy and a broad based central disc protrusion with bilateral foraminal narrowing. There was also a disc bulge and facet arthropathy at L4-5 and a central disc protrusion at T12-L1. (Tr. 566, 659.)

On January 20, 2004, plaintiff was seen by Jesse Portugal, M.D., also of the Mayfield Clinic, for further evaluation of his back, after review of the MRI. On examination, Dr. Portugal noted Mr. Roll could only forward flex with his fingertips to the knees. Extension was moderately reduced and Mr. Roll reported this caused leg pain. Lateral bending and rotation were moderately reduced. Dr. Portugal diagnosed lumbar spondylosis and lumbosacral disc degeneration. He recommended lumbar epidural steroid injections. (Tr. 568.) These provided minimal relief. (Tr. 654, 657.)

Plaintiff also continued to see his primary care physician, Dr. Mauntel, throughout this period. (Tr. 638-51.)[3] Dr. Mauntel monitored plaintiff's medication, his chronic

---

[3] Plaintiff was involved in a motor vehicle accident April 28, 1999, when his truck was hit on the passenger side by another car. (Tr. 132-33.). As a result, plaintiff began having problems relating to the cervical, left arm (elbow, wrist, hand) pain and other symptoms, as well as pain in his low back and legs. After the accident, plaintiff

9

back pain, his left arm pain and other problems.  Upon examination on March 20, 2003, Dr. Mauntel noted obvious weakness in the left foot.  He also found decreased strength in the left hand with grasp and in the forearm musculature.  (Tr. 651.)

In a report dated July 7, 2002, Dr. Mauntel indicated that plaintiff's ability to lift and carry was limited to less than 20 pounds occasionally and no amount of weight frequently by left arm and left leg.  (Tr. 680-81.)  He noted that due to lumbar radiculopathy, as identified by Dr. Taha, plaintiff should not walk/stand for more than four hours a day and only one-half hour at a time.  (Tr. 681.)  Dr. Mauntel noted that plaintiff would have trouble handling, fingering, or feeling on the left, noting an EMG documented nerve entrapment.  (Tr. 682.)  Dr. Mauntel concluded that plaintiff was unable to use his left arm/hand for any task repetitively, even tasks involving less than 10 pounds.  (Tr. 684.)

Dr. Taha provided a comprehensive summary of plaintiff's treatment in a letter dated October 31, 2002.  He noted the following restrictions:

> Considering the combination of chronic pain in the low back, legs, neck and the left arm I feel it is reasonable to limit his lifting to 10 pounds or less and to limit his standing, walking and sitting to a part-time basis in competitive employment.  I do not believe that this patient can work more than four to six hours out of an eight hour day.  For detailed disability evaluation I encourage Mr. Roll to be evaluated by physicians who routinely perform disability evaluations.  I feel comfortable knowing him for several years now and treating him for two conditions and seeing how Mr. Roll progressed down with his health I believe it is appropriate for me to recommend that he be limited in terms of work as described above.

(Tr. 360.)

---

followed up with Dr. Mauntel, his primary care physician.

10

In a form dated September 4, 2005, Dr. Mauntel noted that he did not think plaintiff could lift even 10 pounds occasionally due to his left arm and low back problems. (Tr. 674-75.) He indicated that plaintiff should not walk/stand for more than two hours in an eight-hour day and for only one-half hour at a time. Dr. Mauntel also noted that plaintiff would need to get up from sitting every one-half hour. (Tr. 675.) Dr. Mauntel again noted plaintiff would have problems with handling, finger, and feeling on the left. (Tr. 676.)

The ALJ discounted the above findings, however, and afforded significant weight to the findings of non-examining state agency physicians who reviewed plaintiff's medical history in May 2001 and October 2001 and opined that plaintiff would be able to lift or carry 40 pounds occasionally and 25 pounds frequently, stand or walk about six hours in an eight hour workday, sit about six hours in an eight hours workday, frequently climb stairs or ramps, balance, stoop, kneel or crouch, occasionally climb ladders, ropes, or scaffolds, occasionally crawl, never use left hand controls, and only occasionally use his left hand for fingering or feeling. (Tr. 298-99, 452.)

The ALJ also gave great weight to the findings of Dr. Long, a physical and rehabilitation specialist, who consultatively examined plaintiff in September 2005. Dr. Long opined that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours each in an eight-hour workday, sit without limitation, and had limited ability to push and pull with his legs due to low back pain; could occasionally perform postural activities, and had no manipulation limitation. (Tr. 552-54.)

11

The ALJ assigned "little weight" to the findings of Dr. Taha and Dr. Mauntel.[4] With respect to Dr. Taha, the ALJ found that "he is hardly a 'treating' physician" because plaintiff had not seen Dr. Taha on an ongoing basis or in the past few years. (Tr. 455.) The ALJ further noted that Dr. Taha had not seen/evaluated plaintiff since 2002, and that the extreme limitations suggested by him are not supported by the findings on physical examination, the objective medical evidence, plaintiff's treatment history, and the overall record. *Id.*

As detailed above, contrary to the findings of the ALJ, Dr. Taha's medical opinion is well supported and consistent with the medical record. Dr. Taha treated plaintiff for approximately two years. Dr. Taha's opinion included a thorough description of plaintiff's treatment in 2000 through 2002. (Tr. 359-360). Dr. Taha has since moved from the area. Nonetheless, Dr. Taha's opinion is supported by objective medical testing, such as EMG and nerve conduction studies showing nerve damage in the left arm (Tr. 196,197-236, 690), an MRI of the lumbar spine documenting advanced degenerative spine disease herniated disc (Tr. 387), a discogram replicating plaintiff's pain at L5-S1 (Tr. 315), a CT scan showing a probable herniated disc (Tr. 312), and a more recent MRI that continued to show advanced degenerative disease of the lumbar spine at multiple levels. (Tr. 658-59.)

---

[4] Dr. Mauntel completed two physical capacity questionnaires in July 2002 and September 2005. In each of the questionnaires, Dr. Mantel indicated that plaintiff was able to lift and carry 10 pounds occasionally and no amount of weight frequently; however, he also indicated on both questionnaires that plaintiff was capable of performing medium work (described as lifting up to 50 pounds, on a sustained basis). Plaintiff maintains that Dr. Mauntel simply misread the forms. However, the ALJ afforded little weight to the assessments noting that they were internally inconsistent.

Moreover, the undersigned finds that the ALJ's conclusion that Dr. Taha is not a treating physician is not supported by the evidence of record.  Thus, as a treating physician, Dr. Taha's findings were entitled to controlling weight.  *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.") And even if a treating physician's opinion is contradicted by substantial evidence, the opinion is not to be dismissed, and it is still entitled to deference.  *Roush*, 326 F.Supp. 2d at 862.

Furthermore, the ALJ appears to discount Dr. Taha's findings, at least in part, because he had not seen plaintiff since 2002.  Yet, the ALJ gave significant weight to the opinions of two non-examining state agency who reviewed plaintiff's medical records in May 2001 and October 2001.

The Court does not dispute that it is the ALJ's prerogative to resolve conflicts in the medical evidence.  However, when that conflict involves the opinions of a treating physician and a consultative examiner, the ALJ may not ignore the law requiring special deference to the opinions of treating physicians when resolving the conflict.  "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

Because the ALJ failed to accord any significant weight to the opinions of the treating physicians in this case, her RFC finding, which relies on the RFC of non-examining state agency physicians and a one-time consultative examiner, to the exclusion of the treating physician, is without substantial support in the record.  *Walters*, 127 F.3d at 530-31

### III.

When, as here, the nondisability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing."  42 U.S.C. § 405(g)*; Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."  *Faucher,* 17 F.3d at 176; s*ee also Abbott v. Sullivan,* 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming.  *Faucher,* 17 F.3d at 176; s*ee also Felisky v. Bowen,* 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v.*

*Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).  Such is the case here.

In view of the opinion of plaintiff's treating physician and plaintiff's assertions of disabling pain, there exists substantial evidence of plaintiff's disability.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that plaintiff was not entitled to a period of disability and disability income benefits beginning on April 28, 1999, be found **NOT SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **REVERSED**; that this matter be **REMANDED** to the ALJ for an immediate award of benefits; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**


Date:   February 20, 2008                  s/Timothy S. Black
                                           Timothy S. Black
                                           United States Magistrate Judge

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES J. ROLL,                           Case No. 1:07-cv-136

       Plaintiff,                        Judge Susan J. Dlott
                                          Magistrate Judge Timothy S. Black

vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**NOTICE**

      Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

16